88 P.3d 1181

**DAYSTAR INVESTMENTS, L.L.C., an Arizona limited liability company, Plaintiff–Appellant,**

v.

**MARICOPA COUNTY TREASURER; Adam Sandoval and Ofilia Sandoval; City of Phoenix, Neighborhood Maint & Zoning Enf., and City Treasurer; Federal National Mortgage Assoc.; J.D.W. Enterprises, Inc.; Internal Revenue Service; Ford Motor Credit Co., Defendants–Appellees.**

No. 1 CA–CV 03–0458.

Court of Appeals of Arizona, Division 1, Department E.

May 6, 2004.

Review Denied June 29, 2004.

Sterling R. Threet, Mesa, Attorney for Plaintiff–Appellant.

Richard M. Romley, Maricopa County Attorney By John W. Paulsen, Deputy County Attorney, Phoenix, Attorneys for Defendants–Appellees Maricopa County Treasurer.

## OPINION

NORRIS, Judge.

¶ 1 Daystar Investments, L.L.C. purchased a tax lien on real property located in Maricopa County, Arizona. Subsequently, it obtained a default judgment foreclosing the redemption rights of the record owners and several others who may have had an interest in the property. The judgment also ordered the Treasurer of Maricopa County to execute and deliver a deed conveying the property to Daystar. The Treasurer, who was not a party to the foreclosure action, refused to issue the deed, asserting Daystar's judgment had been obtained in violation of state law.

¶ 2 The fundamental issue presented in this appeal is whether the Treasurer was required to comply with the court's order directing him to issue the deed to Daystar. Under the facts presented, we hold that the Treasurer was not bound by the court's order and could question the propriety of Daystar's foreclosure action and the court's order directing issuance of the deed.

## BACKGROUND

¶ 3 On April 18, 2002, Daystar sued the owners of the property and several others ("defendants") to foreclose their rights to redeem a tax lien which Daystar had purchased from the Treasurer ("foreclosure action"). Under state law, to secure payment of delinquent taxes on real property, county treasurers are authorized to sell tax liens, which are interest-bearing investments. Arizona Revised Statutes ("A.R.S.") Section 42–18101 (1999); *see generally Bauza Holdings, L.L.C. v. Primeco, Inc.,* 199 Ariz. 338, 339, ¶ 2, 18 P.3d 132, 133 (App.2001). The purchaser of a tax lien receives a certificate of purchase, known as a tax lien certificate, which recites, among other matters, the name of the purchaser and the date of the sale. A.R.S. § 42–18118(A) and (B) (Supp. 2003). The tax lien certificate serves as evidence entitling the holder to a deed if certain statutory conditions are met.

¶4 In its amended complaint Daystar alleged that in February 1999, the Treasurer had sold the "[p]roperty ... at a tax sale," that "Certificate of Purchase No. 99002279 [had been] assigned to the sale" and that on February 5, 2001, this certificate had been sold and issued to Daystar. Because the defendants had three years from the date of the tax lien sale to redeem the lien, A.R.S. § 42–18151(A) (1999), A.R.S. § 42–18152 (1999) and A.R.S. § 42–18201 (Supp.2003), Daystar also alleged that more than three years had elapsed since the date of the tax lien sale.[1] Daystar did not name the Treasurer as a defendant in the action.

¶5 Daystar obtained a default judgment on January 8, 2003. The judgment recited several "findings," two of which are at issue in this appeal:

> [i]n February, 1999, the Treasurer of Maricopa County, Arizona, sold the Property, which is located in Maricopa County, Arizona, in order to pay for the delinquent taxes legally levied and assessed against the Property, together with interest, penalties and other charges. The sale was valid and the taxes due and owing on the Property were delinquent at the time of the sale. The Certificate of Purchase No. 99002279, was issued to DAYSTAR IN-VESTMENTS, L.L.C.
>
> \* \* \*
>
> Pursuant to A.R.S. § 42–451 [now A.R.S. § 42–18201] because more than three years have elapsed since the date of the sale set forth above and none of the Property has been redeemed from the sale, Plaintiff is entitled to foreclose the rights of the Defendants.

¶6 In addition to foreclosing the defendants' rights to redeem, in accordance with A.R.S. § 42–18204(A)(2) (Supp.2003), the judgment ordered the Treasurer to execute and deliver to Daystar a deed conveying the property. Section 42–18204(A)(1–2) states, in pertinent part, that in an action to foreclose the right to redeem "if the court finds that the sale is valid, and that the tax lien has not been redeemed, the court shall enter judgment" foreclosing the right of the defendant to redeem and "[d]irecting the county treasurer to expeditiously execute and deliver to the party in whose favor judgment is entered, including the state, a deed conveying the property described in the certificate of purchase."

¶7 After obtaining a buyer for the property, Daystar sent the Treasurer a certified copy of the judgment and requested the Treasurer to issue the deed. A.R.S. § 42–18205 (1999) provides, in part, that "[o]n receiving a certified copy of a judgment foreclosing the right to redeem" along with the required fee, the "county treasurer shall execute and deliver to the party in whose favor the judgment was entered a deed conveying the property described in the judgment." The Treasurer refused to issue the deed, asserting Daystar had purchased the tax lien on February 5, 2001, and that its foreclosure action had been filed before expiration of the three year redemption period, in violation of A.R.S. § 42–18201.

¶8 Daystar then petitioned the court in the foreclosure action to order the Treasurer to show cause why he should not be held in contempt for not obeying the court's order directing him to execute and deliver the deed to Daystar. Daystar asserted that even if there had been an irregularity in the sale process, the judgment and the findings, were final and binding on the Treasurer. Daystar also asserted that the Treasurer was not an interested party and was without standing to object to the judgment.

¶9 The Treasurer responded to Daystar's petition with a motion to quash. The Treasurer argued that the Rules of Procedure for Special Actions governed enforcement of a public official's statutory obligations and that Daystar had failed to properly serve the Treasurer with process as required under those rules. On the merits, the Treasurer

---

1. A.R.S. § 42–18151(A) identifies the individuals or entities who have redemption rights; A.R.S. § 42–18152 states, in part, that a tax lien may be redeemed within three years after the date of the sale; and A.R.S. § 42–18201 states that at "any-time beginning three years after the sale of the tax lien ... if the lien is not redeemed, the purchaser ... may bring an action to foreclose the right to redeem."

**572**

asserted Daystar was not entitled to any relief because the tax lien had not been offered for sale until February 2001, that Daystar had purchased the tax lien on February 5, 2001 and that the foreclosure action was premature in violation of A.R.S. § 42–18201. The Treasurer submitted several records to the court which the Treasurer contended showed that Daystar had purchased and paid for the tax lien, as well as several other tax liens, in February 2001.

¶ 10 Thereafter, by stipulation, Daystar withdrew its request for an order holding the Treasurer in contempt, the Treasurer withdrew its motion to dismiss and the parties agreed that Daystar would not have to seek relief through a special action. The parties requested the court to rule on the following issue as a question of law:

> Whether the Treasurer must comply with a final and non-appealable judgment foreclosing a certificate of purchase as provided under A.R.S. § 42–18204, and directing him to issue a deed pursuant to A.R.S. § 42–18205, even if the Treasurer believes the foreclosure action was brought prematurely under A.R.S. § 42–18201?

The parties further stipulated that if the court decided this question in the affirmative, it should order the Treasurer to immediately issue the deed, but that if it decided this question in the negative, a question of fact still remained as to whether the foreclosure action was premature.

¶ 11 At the show cause hearing, the parties discussed the stipulation with the court and argued the merits of their respective positions. The trial court informed the parties that it would first rule on whether the Treasurer had "an interest in this matter" and then, depending on its resolution of this issue, would address the validity of the judgment.

¶ 12 The trial court did not follow this sequence, and decided to reject the parties' stipulation. Implicitly finding the Treasurer had "an interest in this matter," the court ruled on the validity of the default judgment. The court found that the records and materials submitted by the Treasurer demonstrated the tax lien had not been sold until February 2001 and that Daystar's foreclosure action

had been filed before expiration of the three year period required by A.R.S. § 42–18201. In "the interest of justice," the court then treated Daystar's petition as a motion for relief under Rule 60(c), Arizona Rules of Civil Procedure, and set aside the default judgment for "mistake, inequity and the need to correct manifest error." This appeal followed.

## DISCUSSION

### A. Standard of Review.

¶ 13 Generally, whether to set aside an entry of default is a decision within the discretion of the trial court and our review is limited to a finding of a clear abuse of discretion. *Hirsch v. Nat'l Van Lines, Inc.,* 136 Ariz. 304, 308, 666 P.2d 49, 53 (1983). If a trial court's decision is based upon "a determination of disputed questions of fact or credibility, a balancing of competing interests, pursuit of recognized judicial policy, or any other basis to which we should give deference," we will not substitute our judgment for that of the trial court. *Gen. Elec. Capital Corp. v. Osterkamp,* 172 Ariz. 185, 188, 836 P.2d 398, 401 (App.1992). However, where the facts are not in dispute and "there are few or no conflicting procedural, factual or equitable considerations, the resolution of the question is one of law or logic." *Id.* "In such cases, we must, if appropriate, substitute our judgment for that of the trial court, and if the trial court vacated entry of default without legal grounds, that constitutes an abuse of discretion." *Id.*

### B. The Treasurer's Standing.

¶ 14 Daystar asserts that the trial court's order vacating the default judgment must be reversed because the Treasurer did not have standing to challenge the default judgment and its findings and was required to issue the deed upon receipt of the judgment, as required by A.R.S. § 42–18205(A). We disagree, and hold that the Treasurer was entitled to question the order directing him to deliver the deed to Daystar.

¶ 15 First, as Daystar acknowledges, the Treasurer was not a party to the

foreclosure action. As the Arizona Supreme Court has recognized, generally a person who is not a party to an action is not bound by the result. *Scottsdale Mem'l Health Sys., Inc. v. Clark,* 157 Ariz. 461, 466, 759 P.2d 607, 612 (1988).

> Whether by way of res judicata or collateral estoppel, the preclusive effect of a judgment is limited to parties and persons in privity with parties. *See Fremont Indemnity Co. v. Industrial Commission,* 144 Ariz. 339, 342, 697 P.2d 1089, 1092 (1985) ("a stranger to a litigation may not be bound by a determination made therein for purposes of subsequent litigation") ....

*Id.* Thus, a judgment between parties to a lawsuit will resolve the issues in dispute as between them, but will not resolve the rights, duties and obligations of non-parties to the case. As a non-party to the foreclosure action, the Treasurer was not bound by the judgment and its findings.

¶ 16 Second, the Treasurer had an interest in determining his responsibilities under the circumstances and thus had "standing" to question whether he was required to comply with the order. The Treasurer refused to issue the deed because he believed Daystar had failed to comply with the requirements of A.R.S. § 42–18201. That statute requires a three year waiting period before a purchaser of a tax lien may bring an action to foreclosure the right to redeem. This three year window gives the record owner of property and others who may claim a legal or equitable interest in the property an opportunity to avoid losing their interest in the property by paying the taxes and curing the delinquency. *See* A.R.S. § 42–18204(B). Further, during the redemption period, the record owner retains the right to pursue, use and benefit from the property. *Harrington v. Knuckey,* 148 Ariz. 404, 406, 714 P.2d 1299, 1301 (App. 1985). A premature foreclosure judgment wrongfully interferes with these statutory protections.

■ ¶ 17 Although we agree with Daystar that the Treasurer had no equitable or economic interests in the property, the Treasurer nevertheless had an interest in determining whether the default judgment and A.R.S. § 42–18205 required him to issue the deed to Daystar when he had reasonable grounds to believe Daystar had obtained the judgment in derogation of the protections given to the defendants under state law. As Division Two of this court has explained, a treasurer's issuance of a tax deed is mandatory as "long as all statutory requirements have been met and no redemption has occurred." *Harrington,* 148 Ariz. at 407, 714 P.2d at 1302.

¶ 18 An analogous situation was presented in *State ex rel. City of Crestwood v. Lohman,* 895 S.W.2d 22 (Mo.Ct.App.1994). In that case, the governing board of a city located in St. Louis County, Missouri adopted an ordinance imposing a sales tax which would become effective if approved by a majority of the city's voters, and submitted the ordinance to the county board charged with preparing ballots for the vote. The board filed a declaratory judgment action against the city, asserting that a state law prevented cities located in St. Louis County from enacting such a tax. The city argued that the law was unconstitutional. The trial court agreed and directed the board to place the proposal on the ballot. The voters approved the proposal and the city then demanded that the state department of revenue and its director perform their statutory functions and collect the tax. These state officials had not been parties to the declaratory judgment action filed by the board. *Id.* at 24.

¶ 19 The state officials refused to collect the tax. The city obtained a writ of mandamus which directed them to collect the tax. The state officials appealed. The city argued on appeal that the state officials had no interest in the underlying declaratory judgment action and thus no standing to question or collaterally attack the validity of that judgment in the mandamus proceeding. The appellate court disagreed. Explaining that the mandamus action was being used to enforce the underlying declaratory judgment against the state officials, the court held that they had "an interest in determining the Director's responsibility under the circumstances presented here," and had "standing to attack the validity" of the declaratory judgment. *Id.* at 29–30.

¶ 20 Here, as in *Crestwood,* Daystar was attempting to obtain relief in the nature of

mandamus against the Treasurer by using the default judgment as the basis for an order compelling the Treasurer to issue the deed. Just as in *Crestwood,* the Treasurer had an interest in determining his responsibilities under the default judgment and under state law.

¶ 21 Further, even if, as Daystar argues, A.R.S. § 42–18204(A)(2) and A.R.S. § 42–18205(A) impose a mandatory, non-discretionary duty on the Treasurer, Daystar was not necessarily entitled to relief. Daystar was seeking relief in the nature of mandamus and such relief is subject to equitable principles.

> The writ of mandamus is a discretionary writ and even in a case where an absolute legal right is shown, it will be withheld whenever it would aid those who do not come into court with clean hands and wherever the public interest would be adversely affected.

*Sines v. Holden,* 89 Ariz. 207, 209, 360 P.2d 218, 220 (1961).

¶ 22 We reject Daystar's argument that under *Friedemann v. Kirk,* 197 Ariz. 616, 5 P.3d 950 (App.2000), the Treasurer was required to issue the deed. In *Friedemann,* the purchaser of a tax lien obtained a default judgment foreclosing the owner's right to redeem. After the judgment had been entered but before the purchaser had been able to obtain a deed from the treasurer, the treasurer accepted a redemption payment from the owner. The treasurer then refused to issue the deed to the purchaser. *Id.* at 617–18, 5 P.3d at 951–52. The appellate court held that the treasurer was obligated to issue the deed to the purchaser, stating that upon entry of the judgment, the owner has lost the right to redeem and the purchaser had become entitled to delivery of the deed under A.R.S. § 42–18204(A)(2). *Id.* at 618, 5 P.3d at 952. Not only does *Friedemann* stop short of "stating that the county treasurer lacks any discretion to refuse to issue deed," it demonstrates that a treasurer may contest whether a tax lien purchaser is entitled to a deed.

¶ 23 We also disagree with Daystar that under *Christian v. Cotten,* 1 Ariz.App. 421, 403 P.2d 825 (1965), the Treasurer was obligated to issue the deed. In that case, a purchaser of a tax lien certificate sued the record owner of property, the United States, which held a mortgage and two judgment liens on the property, as well as the county treasurer, to foreclose redemption rights. Without any objection from the treasurer, the trial court entered an order directing the treasurer to issue the deed subject to the mortgage and judgment liens of the United States. A non-party to the case, the county (not the county treasurer), appealed. *Id.* at 423–24, 403 P.2d at 827–28. The court held that the county had no right to appeal because it had not been a party to the case and had not been aggrieved by the decision as it had no pecuniary interest in the matter because all of the delinquent taxes and charges had been paid. *Id.* at 424, 403 P.2d at 828. In *Christian,* the question was whether the county, a non-party, could appeal the foreclosure judgment. The case did not present the question of whether a party could enforce a judgment against a non-party.

¶ 24 In sum, we find that the Treasurer had standing to question whether he was obligated to execute and deliver the deed to Daystar.

## C. Rule 60.

¶ 25 Daystar also seeks reversal of the trial court's order vacating the default judgment. Daystar first asserts that the trial court should not have treated its petition as a Rule 60 motion, and second, pursuant to the stipulation, the only issue before the trial court was whether the Treasurer was obligated to comply with the default judgment. We agree with both arguments.

¶ 26 First, the purpose of Daystar's petition was to enforce the judgment. The trial court should not have treated it as a motion to vacate the judgment. Indeed, more fundamentally, it was unnecessary for the trial court to vacate the judgment, as the only issue before it was whether Daystar was entitled to the relief it had requested—an order directing the Treasurer to issue the deed.

¶ 27 Second, at the show cause hearing, the trial court indicated that it would first

decide whether the Treasurer was required to issue the deed in accordance with the default judgment. Daystar, relying on the court's statement that it would defer resolution of all fact issues until after it had resolved this legal issue, did not present evidence contradicting the factual assertions of the Treasurer. Although a court may resolve issues which the parties wish to defer, a court should not do so without a fully developed record. That is what happened here.

## CONCLUSION

¶ 28 We hold the Treasurer was not bound by the court's order directing him to issue the deed to Daystar and could question the propriety of Daystar's foreclosure action and the court's order directing issuance of the deed. We reverse the trial court's order vacating the default judgment and remand this case to the trial court for determination of whether Daystar's foreclosure action was filed before expiration of the three year redemption period and precludes issuance of the deed or whether Daystar is entitled to an order directing the Treasurer to issue the deed. We deny Daystar's request for an award of attorneys' fees incurred in the trial court and on appeal.

CONCURRING: JEFFERSON L. LANKFORD, Presiding Judge and JAMES B. SULT, Judge.