209 P.3d 1056

Mitchell Paul BILKE; Charles Roberts; Kenneth Ashelman; Felton Hale; Richard S. Berry; Mervin L. Davis and Damon D. Fisher, individually and as members of a class, Plaintiffs/Appellants,

v.

STATE of Arizona; Arcor Enterprises, a subdivision of the State; Arizona Correctional Industries, a subdivision of the State, Defendants/Appellees.

No. 1 CA–CV 07–0787.

Court of Appeals of Arizona, Division 1, Department E.

Jan. 29, 2009.

See also 206 Ariz. 462, 80 P.3d 269 and 189 Ariz. 133, 938 P.2d 1134.

Michael E. St. George, Tempe, Attorney for Plaintiffs/Appellants.

Terry Goddard, Attorney General, by A.J. Rogers, Assistant Attorney General, Phoenix, Attorneys for Defendants/Appellees.

GEMMILL, Judge.

¶ 1 Plaintiffs are current or former inmates of the State of Arizona. They appeal the trial court's denial of attorneys' fees in an action to recover "minimum wage" for certain work they performed while incarcerated. They seek an award of attorneys' fees on these alternative grounds: Arizona Revised Statutes ("A.R.S.") section 12–341.01 (2003), A.R.S. § 12–2030 (2003), and the private attorney general doctrine. We conclude that A.R.S. § 12–2030 supports an award of attorneys' fees under these circumstances, and we therefore reverse and remand for additional proceedings.

## BACKGROUND

¶ 2 This litigation has an extensive history that includes three appellate decisions: *Bilke v. State*, 206 Ariz. 462, 80 P.3d 269 (2003); *Bilke v. State*, 189 Ariz. 133, 938 P.2d 1134 (App.1997); and *Bilke v. State*, 1 CA–CV 01–0601 (Ariz.App. Oct. 15, 2002) (mem.decision). In 1988, Plaintiffs filed suit against the State of Arizona, subdivisions of the State, and various individuals in their representative ca-

pacities (collectively "State"), seeking to be paid minimum wage for labor performed while incarcerated, in accordance with A.R.S. § 31–254(A)[1] and § 41–1623(E).[2] Additional inmates filed lawsuits alleging minimum wage claims, several actions were consolidated, and other inmates were allowed to intervene.

¶ 3 Plaintiffs' claims may be separated into three primary fact patterns: inmates who worked for the correctional industries program; inmates who worked for an Inmate Operated Business Enterprise; and inmates who worked for a private business, Cutter Biological, on prison grounds (the "Cutter inmates"). *Bilke*, 189 Ariz. at 135, 938 P.2d at 1136. In 1995, the trial court ruled in favor of the Cutter inmates, explaining:

> The contract [between the Department of Corrections and Cutter Biological] appears to accomplish two purposes. First, it appears to permit the contractor to use Department facilities. Second, it appears to require the Department to assign inmates to the contractor to perform work specified in the contract. The court thinks that the contract therefore falls within the scope of subsection B of A.R.S. § 41–1624.01 as a contract "to provide services or labor rendered by prisoners[."] Accordingly, the court is also of the opinion that the contract required the contractor to pay at least the minimum wage as a result of subsection A of A.R.S. § 31–254. The

court therefore concludes that the Department violated its obligation to the inmates who worked under that contract by not requiring the contractor to pay the requisite minimum wage.

¶ 4 In 1996, judgment was entered by the trial court in favor of the Cutter inmates, determining that they were entitled to minimum wage.[3] Judgment was also entered in favor of the State against the other Plaintiffs. The unsuccessful Plaintiffs appealed, and this court affirmed. *Bilke*, 189 Ariz. at 135–36, 938 P.2d at 1136–37. Subsequently, several inmates (the "coupon plant inmates")—who worked for a coupon-processing plant that had contracted with the DOC to have inmates sort, compile, and redeem coupons for retailers—were permitted to intervene in the action.

¶ 5 Plaintiffs sought attorneys' fees, claiming they were the prevailing parties because the Cutter inmates and certain coupon plant inmates were awarded recoveries based on minimum wage rates. The trial court denied Plaintiffs' motion for fees. Plaintiffs filed a timely appeal, and we have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## ATTORNEYS' FEES UNDER A.R.S. § 12–2030

¶ 6 On appeal, Plaintiffs contend they are entitled to recover fees based on A.R.S. § 12–2030(A).[4] We review de novo

---

1. At all times relevant to these claims, § 31–254(A) provided, in pertinent part:

   Each prisoner who is engaged in productive work in any state prison or institution under the jurisdiction of the department of corrections as a part of the prison industries program shall receive for his work such compensation as the director of the department of corrections shall determine.... If the director enters into a contract pursuant to § 41–1624.01 with a private person, firm, corporation or association the compensation shall ... not be below the minimum wage.

   1991 Ariz. Sess. Laws Ch. 229, § 10. This statute was subsequently amended numerous times and currently provides: "[i]f the director enters into a contract pursuant to § 41–1624.01 with a private person, firm, corporation or association the director shall prescribe prisoner compensation of at least two dollars per hour." A.R.S. § 31–254(A) (Supp.2008). The "director" refers to the director of the State department of corrections. A.R.S. § 41–1601(2) (2004). We cite the

current version of the applicable statute because no revisions material to this decision have occurred.

2. At all times relevant to these claims, § 41–1623(E) provided, in pertinent part:

   "[I]nmates ... may be employed in the manufacture and processing of products for introduction into interstate commerce, so long as they are paid no less than the prevailing minimum wage."

   *Repealed by* 1989 Ariz. Sess. Laws Ch. 65, § 1.

3. Ultimately, the State did not challenge this ruling. *Bilke*, 189 Ariz. at 135–36, 938 P.2d at 1136–37.

4. Because we find Plaintiffs are entitled to fees under § 12–2030, we need not determine whether they might also be entitled to fees in accordance with A.R.S. § 12–341.01 or the private attorney general doctrine.

the application of this statute. *John C. Lincoln Hosp. and Health Corp. v. Maricopa County*, 208 Ariz. 532, 545, ¶ 45, 96 P.3d 530, 543 (App.2004). Section 12–2030 is contained within an article pertaining to the extraordinary legal remedy of mandamus and provides in subsection (A):

> A court shall award fees and other expenses to any party other than this state or any political subdivision of this state which prevails by an adjudication on the merits in a civil action brought by the party against the state, any political subdivision of this state or an intervenor to compel a state officer or any officer of any political subdivision of this state to perform an act imposed by law as a duty on the officer.

Plaintiffs argue they requested mandamus-type relief and therefore § 12–2030(A) is applicable. We agree.

¶ 7 To be entitled to attorneys' fee under § 12–2030, Plaintiffs must establish that they (1) prevailed on the merits (2) in a civil action (3) filed against the State or a political subdivision of the State (4) to compel a State officer or any officer of any political subdivision to perform a duty imposed by law. A.R.S. § 12–2030(A). The statute does not explicitly require that successful attorneys' fees claimants must have prevailed in an action formally entitled "mandamus." *Id.; see also John C. Lincoln*, 208 Ariz. at 545–46, ¶ 46–47, 96 P.3d at 543–44 (explaining that, if the facts of the case established a refusal "to perform a duty imposed by law," attorneys' fees would be recoverable under § 12–2030 for compelling performance of the duty even though the action was not instituted as a mandamus action); *S & R Properties v. Maricopa County*, 178 Ariz. 491, 502, 875 P.2d 150, 161 (App.1993) (holding that § 12–2030(A) applied because taxpayer-plaintiffs sought enforcement of a statutory duty and

"thus asked for relief in the nature of mandamus").[5]

¶ 8 Here, the first three elements are clearly satisfied. The Cutter and coupon plant inmates have prevailed on the merits in a civil action that was filed against the State and political subdivisions of the State. With respect to these inmates, the State does not contest this conclusion.[6]

¶ 9 The final element, therefore, is the only one at issue here: was this an action to compel a State officer to perform a duty imposed by law? The answer is yes.

¶ 10 Plaintiffs sought to compel compliance with A.R.S. §§ 31–254(A) and 41–1624.01(A) and thereby to recover unpaid minimum wages. At all times pertinent to Plaintiffs' claims, § 31–254(A) provided that "[I]f the director enters into a contract pursuant to § 41–1624.01 with a private person, firm, corporation or association the compensation shall be as prescribed by the person, firm, corporation or association but shall not be below minimum wage." Section 41–1624.01(A) provided that "[t]he director shall compensate prisoners for their services pursuant to [A.R.S.] § 31–254." The trial court in 1995 determined that the State had not satisfied its statutorily-required obligations to the successful Plaintiffs:

> [T]he Department *violated its obligation to the inmates* who worked under that contract [between Cutter Biological and the DOC] *by not requiring the contractor to pay the requisite minimum wage.*
>
> . . .
>
> The court believes that the Department and the other defendants also had an obligation to the inmates to see to it that the contractor obligated itself to pay those inmates the minimum wage required by the statutes. Accordingly, the court thinks that the inmates are permitted to assert a

---

5. Although the section heading for § 12–2030 includes the phrase "[m]andamus action," we note that statutory titles and section headings are not law. *City of Phoenix v. Harnish*, 214 Ariz. 158, 163 n. 2, ¶ 20, 150 P.3d 245, 250 n. 2 (App.2006). The actual language of a statute, rather than the heading or title, is most important. *Id.*

6. The State does maintain that the inmates who lost are not entitled to an award of attorneys' fees. We agree. The inmates who worked for the correctional industries program and Inmate Operated Business Enterprises were unsuccessful and therefore are not entitled to an award of fees. The fact that a number of Plaintiffs were unsuccessful would pertain to the amount of fees awarded, an issue not presented here.

*cause of action against the Department for its violation of the previously mentioned statutes.*

. . .

The court first notes that the Department would not have been obligated to pay any wages to inmates working for Cutter [Biological] *had the Department done what it was obligated to do in the first instance,* that is, require Cutter [Biological] to pay the minimum wage. . . . . [T]he court does not think that the legislature intended to preclude inmates from asserting claims against the *Department based on the Department's failure to carry out its obligation.*

(Emphasis added).

¶ 11 In its formal judgment, the trial court specifically referenced the above findings and declared that "DOC was liable to [the Cutter inmates] as a result of [the inmates] providing services to Cutter." The State chose not to challenge this ruling on appeal and, thus, the law of the case is that the DOC violated an obligation owed to the Cutter inmates (and the coupon plant inmates) to see that they were paid the statutorily-required minimum wage.

¶ 12 A duty is a "legal obligation that is owed or due to another . . . that needs to be satisfied." Black's Law Dictionary 521 (7th ed.1999). Based on the trial court's judgment, this was an action to compel a State officer or political subdivision of the State to perform a duty imposed by law. This was not an ordinary action to recover damages for breach of contract or personal injuries. The State's statutory obligation to make sure inmates were paid minimum wage was mandatory, and the director has no discretion to choose whether to pay the required compensation. The Plaintiffs have therefore satisfied all required elements of § 12–2030(A). They have sought relief in the nature of mandamus, and they are entitled to an award of attorneys' fees under § 12–2030(A).

## CONCLUSION

¶ 13 For these reasons, we reverse the judgment denying attorneys' fees to the successful Plaintiffs and remand for additional proceedings to determine an award of attorneys' fees in favor of these Plaintiffs, in accordance with A.R.S. § 12–2030.

CONCURRING: PATRICIA K. NORRIS, Presiding Judge, and DONN KESSLER, Judge.